**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

DEBORAH RAE TURNER,

Plaintiff,

v. Case No. 2:25-cv-560-KRH

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
______________________________/

# ORDER

At issue is Plaintiff Deborah Turner's appeal from a decision by Defendant Commissioner of Social Security. The Commissioner filed a transcript. (Doc. 11). And this appeal is fully briefed. (Doc. 16; Doc. 20). The Court affirms.

## Social Security Disability Insurance Benefit ("DIB") and Supplemental Security Income ("SSI") Review

Disputes over denied DIB and SSI have multiple levels of review. Applicants first seek reconsideration. If unsuccessful, they proceed to a full hearing before an administrative law judge ("ALJ"). Should the ALJ issue an unfavorable decision, the applicant may appeal that determination to the Appeals Council. Finally, if all else fails, the applicant can seek review in federal court.

By the time benefits decisions get here, the record should be well developed. The disputed issues ought to be narrow, limited, and in clear view. At this point, the Commissioner appears (for the first time as an adversary) to argue over whether the decision was right. Almost always, these appeals revolve around

whether the ALJ decision should be upheld.

ALJ rulings in this context often provide detailed explanations of their decisions with voluminous records relevant to the issues. DIB and SSI appeals are highly technical. And the lawyers who practice in this area (on both sides) know their stuff. The Court writes only for the parties. It knows they are knowledgeable about the record and law. So the Court only includes what is necessary to resolve the issues presented on appeal.

For instance, Turner takes no issue with the ALJ's conclusions at step 1. The Court then need not discuss law or fact relevant to those issues. It presumes—without discussion—that these parties understand that step in this context and the relevant facts below in support.

With it understood how the Court approaches this case, some context helps.

## Factual Background

Turner filed applications for DIB and SSI. (Doc. 11-5 at 7-16). Dr. Bradley Stephan and Dr. Steven Arkin evaluated Turner's conditions for alleged disability. Each participated in separate assessments for both claims. Stephan reviewed the DIB and SSI claims at the initial level; Arkin reviewed those claims at the reconsideration level. In total, they provided four disability determinations. (Doc. 11-3 at 2-9 ("Stephan 1") (titled in transcript as 2A); Doc. 11-3 at 10-18 ("Stephan 2") (titled in transcript as 4A); Doc. 11-3 at 29-38 ("Arkin 1") (titled in transcript as 7A); Doc. 11-3 at 39-49 ("Arkin 2") (titled in transcript as 8A)). The ALJ considered all these assessments. He also considered Turner's testimony, the

medical evidence in the record, and the opinions of a vocational expert ("VE").

In the end, the ALJ found that Turner was not disabled as of her date of last insured ("DLI")—which was December 31, 2020. (Doc. 11-2 at 27-28). So the ALJ denied the DIB claim. (Doc. 11-2 at 27-28). But the ALJ found Turner became disabled on December 1, 2021. (Doc. 11-2 at 27-28). So the ALJ awarded any allowable benefits on the SSI claim beginning on that date. (Doc. 11-2 at 27-28).

To be clear, Turner does not directly challenge ALJ's decisions regarding the SSI claim (apart from maybe some minor overlap in the written decision where it is necessary to parse out the reasoning for each claim). Nor does Turner challenge—for the purpose of SSI—the ALJ's conclusion of an established onset date for December 1. So most any challenge to the SSI determination was waived.

## Questions Presented

On appeal, Turner presents six questions:

> 1. Whether the ALJ's Residual Functional Capacity ("RFC") assessment is not supported by substantial evidence because he did not state the rationale for rejecting State agency medical consultant Steven Arkin, M.D.'s, opinion that prior to the [DLI] the Plaintiff must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc., and State agency medical consultant Bradley Stephan, M.D.'s, opinion that the Plaintiff was limited to standing 4 hours of an 8 hour workday, despite stating he found these opinions persuasive, given that the ALJ found the Plaintiff's past relevant work ("PRW") was as a cosmetologist as generally performed in the DOT (code 332.271-010) which is light and requires exposure to chemicals, bleach, and odors, and the VE stated she had had no experience observing the cosmetologist position for many years.
>
> 2. Whether the ALJ erred by finding that the Plaintiff could return to PRW as a cosmetologist, DOT code 332.271-010, because that position was performed as a composite job with stock clerk, DOT code

> 299.367-014, which is medium exertion.
>
> 3. Whether, because the Plaintiff was advanced age during the relevant time period and the ALJ erred by finding the Plaintiff could return to PRW as a cosmetologist and erred by finding the Plaintiff had a light RFC despite a limitation to no more than 4 hours standing and walking, the ALJ circumvented Medical Vocational Guidelines 201.06 or 202.06.
>
> 4. Whether the ALJ erred by finding the Plaintiff had mild limitations in multiple areas of mental functioning but also found that the Plaintiff had no severe mental impairments.
>
> 5. Whether, despite documented treatment for the condition during the relevant time period, the ALJ erred by not evaluating the Plaintiff's Post Traumatic Stress Disorder for severity at step 2 of the sequential evaluation.
>
> 6. Whether the ALJ erred and remand is warranted because he relied on an opinion of non-disability that cited a lack of evidence but did not obtain the files from the two prior applications which may have contained relevant evidence.

(Doc. 16 at 1-2).

**Standard of Review**

A "presumption of validity attaches" to the ALJ's factual findings; but a court must still review the ALJ's decision to "determine the reasonableness of the secretary's factual findings." *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (citations omitted). To be sure, however, "No similar presumption of validity attaches to the Secretary's legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Id.* (citation omitted).

In a DIB or SSI appeal, a judge "must review the agency's decision and determine whether its conclusion, as a whole, was supported by substantial

evidence in the record." *Washington v. SSA*, 906 F.3d 1353, 1358 (11th Cir. 2018) (cleaned up). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). So "the ALJ's decision stands if its decision was based on such relevant evidence as a reasonable person would accept." *Flowers v. SSA*, 97 F.4th 1300, 1309 (11th Cir. 2024) (cleaned up).

"This threshold is 'not high,'" and "courts generally defer to the ALJ, 'who has seen the hearing up close.'" *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 108 (2019)). So even if a judge "would have reached a different result and even if a preponderance of the evidence weighs against the Commissioner's decision," affirmance follows if the ALJ's decision "clears the low evidentiary bar" of substantial evidence. *Id.* (citation omitted); *see also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

Not only is this standard deferential; "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *Washington*, 906 F.3d at 1358 (cleaned up). DIB and SSI appeals do not allow a judge "to decide the facts anew, make credibility determinations, or reweigh the evidence." *E.g.*, *Buckwalter v. SSA*, 5 F.4th 1315, 1320 (11th Cir. 2021); *see also Samuels v. SSA*, 959 F.3d 1042, 1045 (11th Cir. 2020); *Flowers*, 97 F.4th at 1306. At bottom, the simple task is to ask "whether on this record it would have been possible for a reasonable jury to reach the agency's conclusion." *Washington*,

906 F.3d at 1358 (cleaned up).

When challenging an ALJ's decision, the claimant bears the burden to establish reversible error that was not harmless. *Raper v. SSA*, 89 F.4th 1261, 1274 n.11 (11th Cir. 2024). An error is harmless if it "does not affect the ALJ's ultimate decision." *Sarli v. Berryhill*, 817 F. App'x 916, 917 (11th Cir. 2020).

**Analysis**

The Court takes each question presented in turn.

**1. RFC Regarding State Doctor Opinions**

Turner attacks the ALJ's decision regarding the RFC considering the opinions of Arkin and Stephan. The argument is that these opinions were found persuasive but improperly discounted by the ALJ when crafting the RFC. Or, at a minimum, Turner questions if the ALJ provided sufficient explanation of the RFC compared against the persuasiveness finding regarding Arkin and Stephan's opinions.

Stephan 1 found that Turner was not disabled through the DLI. (Doc. 11-3 at 3-9). Stephan 1 concluded that there was insufficient medical evidence to assess Turner's condition at the time of the DLI. (Doc. 11-3 at 6-7). So Stephan 1 found that Turner was not disabled. (Doc. 11-3 at 2, 9). This decision was for Turner's DIB claim. (Doc. 11-3 at 2-3).

Stephan 2 found that Turner was disabled with an onset date of September 30, 2021. (Doc. 11-3 at 10-18). Stephan 2 determined that there was sufficient medical evidence to assess Turner's condition involving obesity, diabetes,

neuropathy, hernia, join pain, depression, anxiety, and long-haul COVID-19. (Doc. 11-3 at 13-17). Stephan 2 noted non-severe mental limitations (Doc. 11-3 at 14-15); it also found severe physical conditions resulting in RFC limitations to allow Turner to function (Doc. 11-3 at 14-17). In the end, Stephan 2 concluded that Turner was disabled at the onset date. (Doc. 11-3 at 10, 18). This decision was for Turner's SSI claim. (Doc. 11-3 at 10-11).[1]

Arkin 1 reconsidered Stephan 1. (Doc. 11-3 at 29-38, 48). It ultimately agreed with Stephan 1 that Turner was not disabled at DLI. So it denied reconsideration of the DIB denial.

Arkin 2 reconsidered Stephan 2. (Doc. 11-3 at 39-47, 49). Arkin 2 was nearly identical to Arkin 1. *Compare* (Doc. 11-3 at 29-38), *with* (Doc. 11-3 at 39-49). Mostly, these reports differed in identifying the type of claim (i.e., DIB or DI), dates, and decision basis codes. But Arkin 2 went a step further on reconsideration and found that Turner was not disabled—even after the onset date. (Doc. 11-3 at 47, 49). So it reversed to deny the SSI claim.

In his decision, the ALJ considered the Stephan and Arkin decisions, then explained the reasoning related to those opinions. Stephan 1 and Arkin 1 both considered Turner's DIB claim. (Doc. 11-3 at 2-3, 29, 48). Each doctor found that there was insufficient medical evidence to support a disability determination at DLI. The ALJ found those opinions persuasive and agreed with those conclusions.

---

[1] In this context, "DI" means disabled individual under Supplemental Security Income ("SSI"). *See* (Doc. 11-3 at 10); Social Security Act, Title XVI.

(Doc. 11-2 at 23). So contrary to Turner's position, there was no disagreement with the ALJ to explain regarding DIB.

As for the other purported deficiencies, Turner's arguments fail.

From the outset, the Commissioner is correct that Stephan and Arkin's RFC limitations were restricted to the SSI claim—not the DIB claim on which they concluded there was insufficient evidence to determine disability at DLI. Tellingly, Stephan 1 didn't refer to the fumes, odors, dusts, gases, poor ventilation, etc. ("fumes") or standing limitations at all. It was, instead, within Stephan 2 that those matters were first discussed. Stephan 1 clearly marked "No RFCs" while noting the relevant period was the DLI. (Doc. 11-3 at 7-8). Stephan 2 found RFC limitations within the SSI context for the "Current Evaluation" period. (Doc. 11-3 at 14). So as for Stephan's assessments, the fumes and standing limitations simply didn't apply to the DIB claim.

As for Arkin 1 and 2, those were reconsideration decisions that simply copied forward the RFC from Stephan 2. Importantly, each concluded there was insufficient evidence on the DIB claim before DLI, (Doc. 11-2 at 33, 35-36), and reiterated the "Current Evaluation" notation for RFC limitations on the SSI, (Doc. 11-2 at 33, 35-36). These records further distinguish between DIB and SSI. One section addressing the medical evidence of record ("MER"). (Doc. 11-3 at 32-33, 41-42). It states: "Please advise if RFC can be provided for Title XVI. For Title II it appears that the claim will still be IE thank you." (Doc. 11-3 at 33, 42). "Title XVI" refers to the SSI section of the Social Security Act; "Title II" refers to the DIB

section; and "IE" often means insufficient evidence—a type of denial—in this context. *See generally* POMS DI 11018.005 (explaining a failure to cooperate-insufficient evidence denial); *see also* (Doc. 11-3 at 33, 42 (noting the claim may be denied at "IE/FTC")). These records make clear that the Arkin 1 and 2 mention fumes and standing limitations only applied to the SSI claim.

In short, these RFC limitations noted in Arkin 1 did not apply at all to Turner's DIB claim. They were simply a result of copied records regarding the SSI claim that Arkin did not intend to create an RFC for DIB.

Even if they did, the ALJ specifically explained why he would not find such opinions persuasive. (Doc. 11-2 at 25-26). The ALJ cited facts supporting his conclusion that he disagreed with the RFC limitations in Stephan 2 or Arkin 1 and 2. (Doc. 11-2 at 23, 25-26). Those conclusions were supported by substantial evidence (including the lack of it) within the record. So Turner isn't right that the ALJ found Stephan and Arkin persuasive on these issues then made contrary findings without explanation; the ALJ simply rendered an unfavorable decision with a supported ruling.

Separately, it was unnecessary to include the fumes limitation in the RFC because the ALJ was analyzing Turner's RFC in the context of her past work—which does not require those limitations. The VE relied on the DOT. Where relevant, the DOT contains no mention of fumes as present for the cosmetology position. DICOT 332.271-010 (Cosmetologist), 1991 WL 672806 (4th ed. 1991). The ALJ relied on the VE's testimony (based on the DOT along with the VE's

training and experience) to determine the fumes limitation need not be in Turner's RFC. (Doc. 11-2 at 26-27).

Regardless, Turner does not show reversible error as to fumes. Arkin 1 stated Turner should "[a]void concentrated exposure" to fumes. (Doc. 11-3 at 36). That phrase isn't defined by the DOT. *Thomas v. Kijakazi*, No. 8:20-cv-2849-SPF, 2022 WL 897542, at *3 (M.D. Fla. Mar. 28, 2022). But many courts understand concentrated exposure to be the least restrictive limitation after none or unlimited. *Id.*; *Parr v. Kijakazi*, No. 3:20-cv-804-CWB, 2023 WL 2720814, at *12 (M.D. Ala. Mar. 30, 2023); *Barnes v. Saul*, No. 8:19-cv-752-T-TGW, 2020 WL 4283236, at *2 n.2 (M.D. Fla. July 24, 2020). Avoiding concentrated exposure may even be consistent with an allowance for "frequent" contact. *Bernier v. Saul*, No. 18cv1633, 2019 WL 5296846, at *7-8 (D. Conn. Oct. 18, 2019). As explained above, the ALJ relied on substantial evidence. And apart from a one-off reference to a non-DOT, unexplained limitation on "Atmospheric Conditions," Turner offers nothing to suggest that she could not perform the duties of the cosmetologist position with respect to fumes. (Doc. 11-6 at 180).

Any fumes limitation was thus beside the point on the DIB claim.

As to the standing limitation, any error was harmless. Again, that limitation only applied to Turner's SSI claim. But the ALJ agreed with Turner and awarded SSI benefits—reversing Arkin's conclusion that Turner was not disabled for the purpose of SSI. To the extent that Arkin could have been construed as setting an RFC limitation on standing for the DIB claim, the ALJ's decision again explained

why it found that unpersuasive.

Turner failed to show reversible error on question 1.

**2. Past Relevant Work ("PRW")**

Turner contends that her PRW as a hairdresser was improperly found to be as a cosmetologist under the DOT. Turner's past job was performed, she says, as a composite position between cosmetologist and stock clerk. The Court disagrees.

The DOT definition of a cosmetologist describes what a regular person would think of for the typical duties of a hairdresser. DICOT 332.271-010 (Cosmetologist), 1991 WL 672806 (4th ed. 1991). For instance, a main function of that job is "[s]tyling hair by blowing, cutting, trimming, and tapering, using clippers, scissors, razors, and blow-wave gun." *Id.* The stock clerk position that Turner identifies realistically has little relation to the main duties of Turner's PRW. But her argument is that the requirement to stock items (presumably normal hair salon items like shampoo, hair gel, etc.) renders her PRW as a composite.

Yet the specific stock clerk position that Turner relies on is facially inapposite. That job is heavy exertion work—requiring someone to lift 50 to 100 pounds frequently. DICOT 299.367-014 (Stock Clerk), 1991 WL 672631 (4th ed. 1991). Contrary to Turner's suggestion, the stock clerk "[p]hysical demand requirements are *in excess* of those for Medium Work." *Id.* (emphasis added). As for stocking, Turner's entire relevant testimony made clear that her job was nothing like a stock clerk. She testified to lifting "[a]nywhere from ten pounds to 50 pounds sometimes rarely. I would also ask for help. It was for stocking shelves

and stuff." (Doc. 11-2 at 59). This is a far cry from a stock clerk's job.

Nothing in the record supports a conclusion that Turner's PRW was actually performed as a composite with the stock clerk position. Even less so, nothing suggests that the general performance of a hairdresser's job should be a composite of cosmetologist and heavy-lifting stock clerk roles. Nor did Turner present this issue to the ALJ. The failure to present a composite job argument below—in conjunction with the after-the-fact failure to find a possible composite job—results in waiver of the issue on appeal. *See Delgado v. O'Malley*, No. 23-61738-CIV-SMITH/SANCHEZ, 2024 WL 4186098, at *9 (S.D. Fla. Sept. 2, 2024).

Apart from that deficiency, the ALJ relied on substantial evidence in the form of the VE's testimony and DOT. (Doc. 11-2 at 66-67). The ALJ specifically accounted for the "sometimes rare[]" possibility of heavy lifting to which Turner alluded. (Doc. 11-2 at 59). The ALJ quantified Turner's PRW as actually performed at the medium exertion level. (Doc. 11-2 at 26, 66-67). The conclusion was that Turner could perform her PRW as generally performed in the national economy. (Doc. 11-2 at 26). Given the substantial evidence in support, this was enough. *See Scott v. SSA*, 440 F. App'x 726, 728 (11th Cir. 2011); *Simpson v. SSA*, 423 F. App'x 882, 884-86 (11th Cir. 2011).[2]

Turner failed to show reversible error on question 2.

[2] She worked as a hairdresser for ten months in 2022—long after the time that she was purportedly unable to do this PRW—albeit only on a part-time basis that did not meet the level of substantial gainful activity. (Doc. 11-2 at 58-59; Doc. 11-6 at 88-89).

### 3. Medical-Vocational Guidelines ("Grid Rules")

Turner challenges the ALJ's failure to apply the grid rules. As the Commissioner explains, this challenge is misplaced.

The grids did not apply to Turner's DIB claim. These rules only apply at step 5. *Geyer v. SSA*, No. 24-11246, 2025 WL 3496665, at *4 (11th Cir. Dec. 5, 2025); *Portwood-Braun v. SSA*, No. 22-11491, 2023 WL 2417856, at *2 (11th Cir. Mar. 9, 2023) ("At step five, whether the claimant can adjust to other work in the national economy is to be determined in one of two ways: by applying the Medical Vocational Guidelines ('grids') or by relying on a VE."). Because the ALJ was right on questions 1 and 2, he never reached step 5 for the DIB claim. So the grid challenge cannot succeed. *Geyer v. SSA*, No. 24-11246, 2025 WL 3496665, at *4 (11th Cir. Dec. 5, 2025).

To the extent that Turner attempts to challenge the ALJ's use of the grid rules for the SSI claim, that wouldn't succeed. The ALJ considered the grids along with the VE's testimony and found that Turner was disabled beginning on December 1, 2021. (Doc. 11-2 at 27).

Turner failed to show reversible error on question 3.

### 4. Consideration of Mental Impairments

Turner challenges the sufficiency and accuracy of the ALJ's analysis regarding limitations regarding her mental capacity. She contends the ALJ incorrectly found her limitations minimal and failed to consider them in the RFC. As the Commissioner argues, the record shows otherwise.

The ALJ thoroughly considered Turner's mental impairments at step 2 before concluding they resulted in "no more than mild limitations." (Doc. 11-2 at 17-19). This analysis included the paragraph B criteria with a detailed discussion of Turner's limitations (or lack thereof) based on the evidence. (Doc. 11-2 at 17-19).

As Turner notes, the ALJ mentioned no more than a "minimal limitation." (Doc. 11-2 at 17). But this was, like the Commissioner counters, within a general discussion of law—with citations. In that regard, the ALJ wasn't confused; he was right. The relevant regulation states that if a mental limitation gets rated as "mild," then the ALJ "will generally conclude that [the] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1); *see also* 20 C.F.R. § 416.920a(d)(1).

Turner does not directly challenge the factual findings that her mental limitations in each broad functioning area were no more than mild. Any dispute over those conclusions is, therefore, waived. But the findings were also supported by substantial evidence. Turner's contortionist logic to force some implied finding of severe mental limitations just doesn't fit the facts.

In sum, the ALJ recognized and applied the correct framework to his analysis of Turner's mental impairments given his finding of no more than mild limitations. There was substantial evidence to support the ALJ's conclusions. And Turner did not show error.

As it related to the RFC, the challenge likewise fails. The ALJ conducted an

RFC analysis, which considered Turner's mild mental limitations both before and after the established onset date. (Doc. 11-2 at 23-26). That ultimate RFC decision was for the ALJ to make. *Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010) ("The task of determining a claimant's ability to work is within the province of the ALJ, not a doctor."). After review as a whole, it is clear the ALJ weighed his findings regarding mental limitations and simply concluded nothing would be appropriate to add to the RFC based on the evidence. *See Prude v. SSA*, No. 23-14198, 2024 WL 5103664, at *4 (11th Cir. Dec. 13, 2024). And once more, there was substantial evidence in support.

Turner failed to show reversible error on question 4.

### 5. Evaluation of Post-Traumatic Stress Disorder ("PTSD")

Turner contends that the ALJ failed to evaluate her previous treatment for PTSD at step 2. This fails. The ALJ analyzed Turner's mental limitations—specifically mentioning the pre-DLI PTSD diagnosis—at step 2. (Doc. 11-2 at 17). This analysis reviewed evidence related to Turner's mental state before concluding that her limitations were no more than mild. (Doc. 11-2 at 17-19). The Court can say for sure that the ALJ considered the PTSD diagnosis when weighing the evidence at step 2. And there was facially no error.

Even so, the Commissioner is correct that any error on this point would be harmless. *Flemming v. SSA*, 635 F. App'x 673, 676 (11th Cir. 2015). The ALJ found severe impairments apart from PTSD and proceeded through the sequential process. So any lack of severity analysis at step 2 was beside the point.

Turner failed to show reversible error on question 5.

### 6. Past Applications

Finally, Turner challenges the ALJ for failing to obtain her two prior applications for DIB benefits. Turner unsuccessfully sought DIB in 2014 and 2016. Those claims were apparently rejected at the reconsideration level. (Doc. 11-3 at 3). The ALJ neither relied on those earlier applications nor included them in the record. (Doc. 11-2 at 13). And at the hearing, Turner confirmed the record was complete. (Doc. 11-2 at 55).

At times it might be helpful for the ALJ to include records from prior claims. *See generally Klarner v. SSA*, No. 2:23-cv-25-NPM, 2024 WL 1298820, at *5-6 (M.D. Fla. Mar. 27, 2024). For example, if claimant previously received DIB for an extended period based on an established disability, then it could make sense for the ALJ to make a prior claim file part of the current record. *Garrett v. SSA*, No. 6:16-cv-1516-Orl-41GJK, 2017 WL 1460733, at *4-5 (M.D. Fla. Mar. 15, 2017). But generally, an ALJ is not required to incorporate records from prior claims if she will not rely on them. *Class v. Berryhill*, No. 3:16-cv-1415-J-JBT, 2018 WL 11255570, at *2-3 (M.D. Fla. June 14, 2018); *Burnett v. SSA*, No. 2:22-cv-669-NPM, 2024 WL 1270486, at *5 (M.D. Fla. Mar. 26, 2024); *Brakefield v. SSA*, No. 2:23-cv-24-KCD, 2024 WL 303060, at *6-7 (M.D. Fla. Jan. 26, 2024). And to challenge the ALJ's development of the record, the claimant bears the burden to show specific gaps that create unfairness or clear prejudice. *E.g.*, *Garrett*, 2017 WL 1460733, at *4.

The ALJ was not required to include records from either of Turner's prior DIB applications. Nor does she show any prejudice or unfairness here. At best, Turner guesses that perhaps there's some needle in a haystack from previously rejected DIB applications that might help now. Such speculation, however, does not meet Turner's burden to show reversible error.

Turner failed to show reversible error on question 6.

## Conclusion

For those reasons, the Court answers each question presented in the negative. The ALJ's decision was supported by substantial evidence. To the extent the ALJ could have explained something more clearly, Turner failed to show a harmful error. So the Court affirms the denial of Turner's DIB.

**ORDERED:**

1. Defendant's decision is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

2. The Clerk must **ENTER** judgment in Defendant's favor, terminate any motions or deadlines, and close the case.

In Fort Myers, Florida, on September 18, 2026.

Kevin R. Huguelet
United States Magistrate Judge